# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

REBECKA JOHNSON,

    **Plaintiff,**

v.                              Case No:   6:16-cv-111-Orl-28KRS

STEAK N SHAKE OPERATIONS, INC.,

    **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION FOR A FAIRNESS FINDING, APPROVAL OF SETTLEMENT, AND DISMISSAL WITH PREJUDICE (Doc. No. 50)** |
| **FILED:** | **August 24, 2017** |

| | |
|---|---|
| **MOTION:** | **JOINT MOTION TO REFORM SETTLEMENT AGREEMENT AND ENFORCE SETTLEMENT (Doc. No. 58)** |
| **FILED:** | **November 26, 2017** |

**I.    BACKGROUND.**

I have previously reviewed the history of this case. Doc. No. 48. Because the procedural history of this case is complicated, I again review the history of this case in detail here.[1]

---

[1] The facts and procedural history of this case are unique. Thus, the recommendations in this Report and Recommendation are limited to the facts presented by this case.

Plaintiff, Rebecka Johnson, filed a complaint in state court against Defendant, Steak N Shake Operations, alleging that Defendant failed to pay her overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; failed to pay her minimum wages in violation of the Florida Minimum Wage Act, Fla. Stat.§ 448.110; and failed to pay her wages in violation of Florida Constitution Article X, § 24(c). Doc. No. 2. Defendant removed the case to this Court on January 25, 2016.

Defendant served an Offer of Judgment on Plaintiff. Doc. No. 37-1. In the Offer of Judgment, Defendant offered to pay Plaintiff $2,500 if Plaintiff executed a proposed settlement agreement and dismissed with prejudice her claims against Defendant. Defendant also agreed that it would pay Plaintiff a reasonable sum for the recovery of attorneys' fees and costs and, if agreement could not be reached, that the Court would be asked to determine the reasonable sum to be paid. *Id.* Plaintiff timely accepted the offer on March 30, 2017. Doc. No. 37-2.

On May 5, 2017, Plaintiff filed a notice of voluntary dismissal with prejudice except as to the issue of attorneys' fees and costs. Doc. No. 32. I struck the notice because Defendant had filed an answer and, therefore, Plaintiff could not voluntarily dismiss the case under Federal Rule of Procedure 41(a)(1)(A)(i). Doc. No. 33.

On May 10 and 11, 2017, the parties executed the settlement agreement contemplated by the Offer of Judgment. Doc. No. 50-1 ("May 2017 Settlement Agreement"). The May 2017 Settlement Agreement called for Plaintiff to receive $2,500 divided into two payments of $1,250. In keeping with the terms of the Offer of Judgment, it did not address the issue of attorneys' fees and costs. *Id.* On May 17, 2017, the parties filed a joint stipulation of dismissal with prejudice except as to the issue of Plaintiff's attorneys' fees. Doc. No. 34. On May 22, 2017, Plaintiff also filed a motion for attorneys' fees and costs. Doc. No. 37. On May 26, 2017, I held a hearing on

the joint stipulation of dismissal, noting that the self-executing stipulation of dismissal did not likely result in Plaintiff being entitled to an award of attorneys' fees under the FLSA or Florida law. Doc. No. 35; *see also* Doc. Nos. 40, 41. Following the hearing, I denied Plaintiff's motion for attorneys' fees without prejudice. Doc. No. 41.

On June 1, 2017, Defendant transmitted the settlement payment of $2,500 to Plaintiff's counsel. Doc. No. 58-2. It appears that Plaintiff's counsel transmitted that payment to Plaintiff, and she has never returned the funds to Defendant.

On June 15, 2017, Plaintiff filed a motion to withdraw the joint stipulation for dismissal. Doc. No. 44. That motion was granted on August 21, 2017. Doc. No. 49. In granting the motion, the Court ordered the parties to file a motion requesting that the Court approve their settlement in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), no later than August 31, 2017. *Id.*

On August 24, 2017, the parties filed the currently-pending Joint Motion for a Fairness Finding, Approval of Settlement, and Dismissal with Prejudice. Doc. No. 50. In the motion, the parties sought approval of their settlement. The attorneys also informed they Court that they had reached a resolution on the issue of Plaintiff's attorneys' fees and costs. Specifically, Defendant had agreed to pay Plaintiff's counsel $5,000 in full resolution of Plaintiff's claims for attorneys' fees and costs. *Id.* The parties attached the May 2017 Settlement Agreement to their motion. Doc. No. 50-1. As explained above, that settlement agreement does not include the agreement to pay $5,000 in attorneys' fees. On August 30, 2017, I entered a supplemental briefing order. Doc. No. 51. I required the parties to address several issues, including: (1) whether Plaintiff had compromised her FLSA claim and, if so, to what extent; and (2) why the scope of the release contained in the settlement agreement (which runs to individuals and entities who are not parties to

this case and releases claims other than the wage claims raised in the complaint) does not undermine the fairness of the agreement. I also required Defendant's counsel to represent that they had received the settlement funds in their trust account and would disburse those funds upon a favorable ruling by the Court. *Id.*

The parties twice requested extensions of time to provide the requested information. Doc. Nos. 52, 56. In those motions, they represented that they planned to draft a new settlement agreement that addressed my concerns and have Plaintiff execute that revised agreement. Doc. No. 52. They also explained that Plaintiff's counsel had been attempting to have Plaintiff sign the new agreement but she had not yet done so. *Id.*

On November 26, 2017, counsel for the parties filed the currently-pending Joint Motion to Reform Settlement Agreement and Enforce Settlement. Doc. No. 58. In the motion, they explained that Plaintiff's counsel had repeatedly attempted to have Plaintiff sign the revised settlement agreement. Nonetheless, she did not do so and, around October 20, 2017, stopped communicating with Plaintiff's counsel. Accordingly, counsel asked the Court to "reform" the parties' settlement agreement to contain only terms that are legally enforceable and approve the terms of that settlement. Defendant's counsel also represented that they had received the $5,000 in attorneys' fees from Defendant and would disburse those funds to Plaintiff's counsel upon a favorable ruling from the Court.

Both motions were referred to me, and they are ripe for adjudication.

## II. JOINT MOTION TO REFORM SETTLEMENT AGREEMENT AND ENFORCE SETTLEMENT.

As explained above, the parties executed a settlement agreement on May 10 and 11, 2017. That May 2017 Settlement Agreement disposed of Plaintiff's FLSA claims, but it did not address Plaintiff's claims for attorneys' fees. It also included a release that was arguably too broad.

Counsel drafted a revised settlement agreement that addressed these issues. Plaintiff's counsel was, however, unable to obtain Plaintiff's signature on the revised settlement agreement. As a result, counsel ask the Court to essentially re-write the May 2017 Settlement Agreement (which was signed by Plaintiff) to reflect the revised terms and enforce the agreement as revised. The problem with this approach, at least as to the attorneys' fees award, is that the record does not include any evidence that Plaintiff ever agreed to the $5,000 amount.[2] Because, as discussed below, Plaintiff has significantly compromised her claim, her assent to the amount of attorneys' fees is not something the Court can simply overlook. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam) (cited as persuasive authority) ("[The] FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."). Without Plaintiff's assent, I cannot, as counsel requests, recommend that the Court "enforce" the agreement to the $5,000 in fees. Accordingly, I recommend that the Court **DENY** the Joint Motion to Reform Settlement Agreement and Enforce Settlement (Doc. No. 58).

That said, Plaintiff agreed to have the amount of attorneys' fees be determined by the Court when she accepted the Offer of Judgment. Doc. No. 37-1. It also appears that, despite a previous motion claiming in excess of $20,000 in fees, Plaintiff's counsel has agreed to accept $5,000 and Defendant has agreed to pay that amount. Based on these facts, I will first discuss whether the original settlement agreement signed by Plaintiff (the "May 2017 Settlement Agreement") with recommended revisions is fair and reasonable. I will then address whether the separate agreement to pay $5,000 in attorney's fees taints the Settlement Agreement. *Cf. Bonetti v. Embarq Mgmt. Co.*,

---

[2] Counsel represent that she agreed to the amount (Doc. No. 50, at 2 ("Plaintiff and her counsel have accepted.")), but such a representation is not evidence.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) ("[I]f the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.").

### III. JOINT MOTION FOR A FAIRNESS FINDING, APPROVAL OF SETTLEMENT, AND DISMISSAL WITH PREJUDICE.

*A. Applicable Law.*

In *Lynn's Food*, the U.S. Court of Appeals for the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353. Under *Lynn's Food*, a court may only enter an order approving a settlement if it finds that the settlement is fair and reasonable, *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240 (M.D. Fla. 2010), and that the ensuing judgment is stipulated, *Nall v. Mal Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013).

When a settlement agreement includes an amount to be used to pay attorneys' fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. If the Court finds that the payment to the attorney is not reasonable, it must consider whether a plaintiff's recovery might have been greater if the parties had reduced the attorneys' fees to a reasonable amount. *See id.* at 351–52; *see also Bonetti*, 715 F. Supp. 2d at 1228 (finding that the Court must consider the reasonableness of attorneys' fees when a "settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney"). If the parties agree only on the amount to be paid to the plaintiff, the Court determines a reasonable fee using the lodestar approach. *Bonetti*, 715 F. Supp. 2d at 1228.

*B.     Analysis.*

   1.     <u>Whether Plaintiff has Compromised her Claims.</u>

Under the terms of the May 2017 Settlement Agreement, Defendant agreed to pay Plaintiff a total of $2,500 to settle her FLSA and state law claims, representing $1,250 in alleged back pay and $1,250 in alleged liquidated damages. Doc. No. 50-1 ¶ 2. Counsel represents, and has submitted evidence showing, that the payments were transmitted to Plaintiff on June 1, 2017. Doc. No. 58-2.

In her responses to the Court's FLSA Interrogatories, Plaintiff estimated that she was owed approximately $50,087.92 in unpaid wages, plus an equal amount in liquidated damages. The amount of unpaid wages consisted of $23,000.32 in alleged unpaid minimum wages and $27,087.60 in alleged "off the clock" overtime. Doc. No. 17. Because Plaintiff has received less than the amount requested in her responses to the FLSA Interrogatories, I recommend that the Court find she has compromised her claims within the meaning of *Lynn's Food*.

   2.     <u>Whether the Amount is Fair and Reasonable.</u>

Because Plaintiff has compromised her claims, the Court must, under *Lynn's Food*, evaluate whether the settlement agreement is fair and reasonable. Plaintiff has already received $2,500 in settlement of her FLSA claims. The parties agree that this action involves disputed issues, including whether any FLSA violations were willful, how much "off the clock" overtime Plaintiff worked, and how much overtime compensation had properly been paid to Plaintiff during her employment. Doc. No. 58, at 11-14. These factual disputes explain the parties' compromise, and they believe the settlement is reasonable, given the disputed issues and the complexity, expense, and length of future litigation. I therefore recommend that the Court find that the amount of the compromise is reasonable. *Cf. Bonetti*, 715 F. Supp. 2d at 1227 ("If the parties are represented by

competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

>   3. Whether the Scope of the Release Undermines the Fairness or Reasonableness of the Settlement Agreement.

The Court next must consider whether Plaintiff's release of claims in the Settlement Agreement renders the agreement unreasonable. *See generally Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 U.S. Dist. LEXIS 33929, at *17 (M.D. Fla. Mar. 14, 2012) ("Pervasive, overly broad releases have no place in settlements of most FLSA claims."). Some Judges have found general releases to be overbroad if they are not limited only to the claims asserted in the FLSA case. *See*, *e.g.*, *Colon v. Garda CL Se., Inc.*, No. 6:14-cv-1777-Orl-37KRS, 2015 U.S. Dist. LEXIS 94775, at *3 n.1 (M.D. Fla. July 21, 2015) (finding unreasonable release of wage claims under the Florida Minimum Wage Act and the Florida Constitution when complaint raised only overtime compensation claim under the FLSA).

In this case, the release goes beyond the claims asserted by Plaintiff against Defendant in this action. Instead, it purports to release claims not asserted in the lawsuit and people and entities not named as parties to the lawsuit. For example, Paragraph 2 provides, "In consideration of this Agreement, in full and final settlement of any and all [FLSA] and Florida state law claims, including those under the Florida Minimum Wage Act, which were or could have been made by Johnson against Defendant . . . ." Doc. No. 50-1 ¶ 2. Paragraph 3 also describes the parties and claims released as follows:

> Johnson does hereby irrevocably and unconditionally release[] and forever discharge[] Defendant, Defendant's subsidiaries, business units, affiliates, parent companies, past and present, its predecessors and successors and its respective officers, directors, executives, managers, members, managing members, employees, agents, legal counsel, shareholders, trustees, joint venturers, partners, successors and assigns, past and present (hereinafter referred to collectively as the "Released Parties") from any and all regular and unpaid wage claims, including those under the

> FLSA, the Florida Minimum Wage Act, FLSA overtime and Florida state law, demands, acts, actions, occurrences, costs, losses, obligations, proceedings, litigations, demands, liabilities, promises, causes of action, suits for statutory damages, or for injunctive relief, arising of out of Florida state law, the Florida Minimum Wage Act and the FLSA, whether known or unknown, suspected or unsuspected, that Johnson may have against the Released Parties arising from, in connection with, or relating to (a) the terms and conditions of her employment with Defendant; (b) the termination of her employment with Defendant; and (3) the above styled case.

*Id.* ¶ 3(a).

Such release language arguably sweeps too far and renders the settlement unfair. The May 2017 Settlement Agreement, however, includes a severability provision. *Id.* ¶ 9. Thus, the Court can, in its discretion, strike the overbroad language and: (1) limit the release to Defendant and any other persons or entities that were Plaintiff's "employer" within the meaning of the FLSA; and (2) limit the release the release language to cover claims made in this lawsuit[3], as follows:

- The first sentence in Paragraph 2:

  In consideration of this Agreement, in full and final settlement of all claims made by Johnson against Defendant in the Case[4], Defendant shall pay the total sum of Two Thousand Five Hundred Dollars ($2,500.00) ("Settlement Sum") as follows:[5]

- Subparagraph (a) in Paragraph 3:

  In consideration of and conditioned upon receipt of the Settlement Sum as described above, Johnson does hereby irrevocably and unconditionally release and forever discharge Defendant, and any other person or entity that was her "Employer" as that

---

[3] In the currently-pending Joint Motion to Reform Settlement Agreement and Enforce Settlement, counsel explained that they were proposing to "narrow[] the release to only those claims made in Plaintiff's Complaint," thereby evidencing Defendant's agreement to such a narrowing. Doc. No. 58, at 9.

[4] "Case" is defined in the first recital of the May 2017 Settlement Agreement. Doc. No. 50-1, at 1.

[5] For ease of comparison, the revisions from the May 2017 Settlement Agreement are shown in this strikethrough version (new text appears in italics):

> In consideration of this Agreement, in full and final settlement of ~~any and~~ all ~~[FLSA] and Florida state law~~ claims ~~which were or could have been~~ made by Johnson against Defendant *in the Case*, Defendant shall pay the total sum of Two Thousand Five Hundred Dollars ($2,500.00) ("Settlement Sum") as follows:

term is defined in 29 U.S.C. § 203(d) (hereinafter referred to collectively as the "Released Parties") from all claims made by Johnson in the Case.[6]

- Subparagraph (b) in Paragraph 3:

This release does not extend to claims which as a matter of law cannot be waived.[7]

- Paragraph 6(g):

Johnson hereby waives any and all rights to any further review period.[8]

---

[6] For ease of comparison, the revisions from the May 2017 Settlement Agreement are shown in this strikethrough version (new text appears in italics):

> In consideration of and conditioned upon receipt of the Settlement Sum as described above, Johnson does hereby irrevocably and unconditionally release and forever discharge Defendant, ~~Defendant's subsidiaries, business units, affiliates, parent companies, past and present, its predecessors and successors and its respective officers, directors, executives, managers, members, managing members, employees, agents, legal counsel, shareholders, trustees, joint venturers, partners, successors and assigns, past and present~~ *and any other person or entity that was her "Employer" as that term is defined in 29 U.S.C. § 203(d)* (hereinafter referred to collectively as the "Released Parties") from ~~any and all regular and unpaid wage~~ claims, ~~including those under the FLSA, the Florida Minimum Wage Act, FLSA overtime and Florida state law, demands, acts, actions, occurrences, costs, losses, obligations, proceedings, litigations, demands, liabilities, promises, causes of action, suits for statutory damages, or for injunctive relief, arising of out of Florida state law, the Florida Minimum Wage Act and the FLSA, whether known or unknown, suspected or unsuspected, that Johnson may have against the Released Parties arising from, in connection with, or relating to (a) the terms and conditions of her employment with Defendant; (b) the termination of her employment with Defendant; and (3) the above styled case~~ *all claims made by Johnson in the Case.* ~~It is expressly intended, understood and agreed that the claims, disputes, and controversies released by Johnson shall include:~~
>
> ~~(1) Fair Labor Standards Act and state and local wage-hour laws and regulations;~~
> ~~(2) Claims for disputed wages under the FLSA, Florida Minimum Wage Act, Dual Occupation, Florida Constitution Unpaid Wages and improper tip pool.~~

[7] For ease of comparison, the revisions from the May 2017 agreement are shown in this strikethrough version:

> ~~Johnson agrees and understands that any claims, disputes, and controversies she may have had under the FLSA and the Florida Minimum Wage Act, are effectively waived and released by this agreement.~~ This release does not extend to claims which as a matter of law cannot be waived. ~~Johnson acknowledges and understands that this paragraph is intended to prevent her from making any claim, dispute, and controversy against the released parties regarding any matter or incident relating to or arising from the FLSA or the Florida Minimum Wage Act.~~

[8] For ease of comparison, the revisions from the May 2017 agreement are shown in this strikethrough version:

- The first sentence of the second-to-last, unnumbered paragraph, which appears in all capital letters just above the parties' signatures:

    HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN PARAGRAPH "2" ABOVE, JOHNSON FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SETTLEMENT AGREEMENT AND RELEASE.[9]

Such revisions would render the settlement fair and reasonable under *Lynn's Food*.

### 4. The Venue and Jurisdiction Provision.

The May 2017 Agreement also includes the following paragraph titled "Governing Law":

> Irrespective of the actual place of execution or performance of this Agreement, this Agreement shall be governed by and interpreted under the laws of the United States of America and the state of Florida. The exclusive jurisdiction and venue for any action between the Parties, whether based on, arising out of or related to this Agreement, the transaction(s) contemplated herein or any other relationship between the Parties, shall lie solely and exclusively in the U.S. Federal Courts in the Middle District of Florida, Orlando. These Parties hereby irrevocably consent to jurisdiction and venue in this court.

---

Johnson ~~acknowledges that she is aware that she is giving up all wage related claims that she has or may have against Defendant, its parents, predecessors, successors, subsidiaries, affiliates, and directors, officers, shareholders, members, employees — including, but not limited to, agents, insurers and~~ attorneys, and she hereby waives any and all rights to any further review period.

[9] For ease of comparison, the revisions from the May 2017 Settlement Agreement are shown in this strikethrough version:

> HAVING ELECTED TO EXECUTE THIS AGREEMENT ~~AND GENERAL RELEASE~~, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN PARAGRAPH "2" ABOVE, JOHNSON FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SETTLEMENT AGREEMENT AND RELEASE ~~INTENDING TO WAIVE, SETTLE AND RELEASE ALL FLSA CLAIMS AND FLORIDA MINIMUM WAGE ACT CLAIMS SHE HAS OR MIGHT HAVE AGAINST DEFENDANT, ITS PARENTS, PREDECESSORS, SUCCESSORS, INDEPENDENT CONTRACTORS, SUBSIDIARIES, AFFILIATES, AND ITS DIRECTORS, OFFICERS, SHAREHOLDERS, MEMBERS, EMPLOYEES — INCLUDING, BUT NOT LIMITED TO, AGENTS, INSURERS AND/OR ATTORNEYS ARISING PRIOR TO THE EXECUTION OF THIS AGREEMENT~~.

Doc. No. 50-1 ¶ 10.  The last two sentences of this paragraph do not, contrary its title, deal with "Governing Law."  Moreover, it is not at all clear that this Court would, in fact, have jurisdiction over any action between the parties related to the settlement agreement or any action related to "any other relationship between the parties."  Because the May 2017 Agreement includes a severability provision (*id.* ¶ 9), I recommend that the Court strike the last two sentences of this paragraph, leaving only the choice of law provision.

5. <u>Attorneys' Fees and Costs.</u>

As explained above, Plaintiff agreed to have the Court determine a reasonable fee for her attorneys.  Such a situation is similar to the situation when the parties have settled a plaintiff's FLSA claims but cannot agree on an attorneys' fee award.   In such a case, the Court determines the attorneys' fee using the lodestar method.  *See Bonetti*, 715 F. Supp. 2d at 1228.  Because the Court determines a reasonable fee, there is no concern that the fee awarded to the plaintiff's attorney taints the amount she accepted to settle the case.

In this case, I have reviewed the time sheets and information about the background and experience of the lawyers who performed work for Plaintiff in this case and the opinion of the fee expert.  Doc. Nos. 37, 38.   After reducing the hourly rates for these lawyers to that which is reasonable in this type of case in the Central Florida market, and after reducing the hours worked by the lawyers to deduct clerical, excessive and duplicative work, I find that the reasonable lodestar fee for their work in this case would exceed $5,000.  Accordingly, I recommend that the Court find that the attorneys' fees Defendant agreed to pay counsel for Plaintiff as part of the settlement are reasonable.

## IV. RECOMMENDATIONS.

In light of the foregoing, I respectfully **RECOMMEND** that the Court do the following:

1. **DENY** the Joint Motion to Reform Settlement Agreement and Enforce Settlement Agreement (Doc. No. 58);

2. **NARROW** the scope of the release included in the May 2017 Settlement Agreement (Doc. No. 50-1) as follows:

- Revise the first sentence of Paragraph 2 to read:

    In consideration of this Agreement, in full and final settlement of all claims made by Johnson against Defendant in the Case, Defendant shall pay the total sum of Two Thousand Five Hundred Dollars ($2,500.00) ("Settlement Sum") as follows:

- Revise subparagraph (a) in Paragraph 3 to read:

    In consideration of and conditioned upon receipt of the Settlement Sum as described above, Johnson does hereby irrevocably and unconditionally release and forever discharge Defendant, and any other person or entity that was her "Employer" as that term is defined in 29 U.S.C. § 203(d) (hereinafter referred to collectively as the "Released Parties") from all claims made by Johnson in the Case.

- Revise subparagraph (b) in Paragraph 3 to read:

    This release does not extend to claims which as a matter of law cannot be waived.

- Revise Paragraph 6(g) to read:

    Johnson hereby waives any and all rights to any further review period.

- Revise the first sentence of the second-to-last, unnumbered paragraph which appears immediately above the parties' signatures to read:

    HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN PARAGRAPH "2" ABOVE, JOHNSON FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SETTLEMENT AGREEMENT AND RELEASE.

3. **SEVER** the last two sentences of Paragraph 10 of the May 2017 Settlement Agreement.

4. **FIND** that the May 2017 Settlement Agreement (Doc. No. 50-1) is a fair and reasonable resolution of a bona fide dispute under the FLSA, as modified above.

5. **GRANT in part** the Joint Motion for a Fairness Finding, Approval of Settlement, and Dismissal with Prejudice (Doc. No. 50) without reserving jurisdiction to enforce the parties' the May 2017 Settlement Agreement or any other disputes between the parties.

6. **ORDER** Defendant's counsel to release the $5,000 currently being held in its client trust account to Plaintiff's counsel within ten (10) business days of the Court's Order adopting this Report and Recommendation.

7. **DISMISS** the case with prejudice.

8. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 3, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy